**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MARNAVI SPA, as agent for JILMAR SHIPPING S.A.,<br><br>                                    Petitioner,<br><br>vs.<br><br>ADVANCED POLYMER SCIENCES, INC.<br><br>                                    Respondent. | C.A. No. _____<br><br>**PETITION TO CONFIRM FOREIGN ARBITRAL AWARD** |

**PETITION TO CONFIRM FOREIGN ARBITRAL AWARD**

Petitioner, Marnavi, SpA, ("Marnavi"), as agent for Jilmar Shipping, S.A. ("Jilmar", and together with Marnavi, the "Owners"), and by and through its attorneys, respectfully alleges as and for its Petition against Respondents, Advanced Polymer Sciences, Inc. ("APS", or "Respondent"), as follows:

**INTRODUCTION**

1.      This is an action for confirmation and enforcement of a foreign arbitral award made in the United Kingdom pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Award (the "New York Convention"), and its implementing legislation, the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* (the "FAA").  An arbitral award was rendered in favor of Jilmar by an arbitral tribunal established under the rules and procedures of the United Kingdom Arbitration Act of 1996, on or about November 11, 2005.  Neither Marnavi nor Jilmar are citizens of the United States.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over the subject matter of this action pursuant to 9 U.S.C. § 201, *et seq.*, in that this is an action for confirmation and enforcement of a foreign arbitral award subject to the New York Convention.

3. The country in which the arbitral award was issued is the United Kingdom of Great Britain and Northern Ireland, which ratified the New York Convention on September 24, 1975 and in which the Convention entered into force on December 23, 1975.

4. Venue is proper in this Court pursuant to 9 U.S.C. § 204.

## PARTIES

5. Petitioner Marnavi SpA, is a corporation organized under the laws of Italy and as agent for Jilmar, a corporation organized under the laws of Panama.

6. Upon information and belief, Respondent APS is a corporation organized under the laws of Delaware.

7. APS is a proper party to this proceeding to confirm pursuant to Fed.R.Civ.P. 4(k)(1) and/or principles of quasi-in-rem jurisdiction.

## THE AGREEMENT TO ARBITRATE AND THE ARBITRAL AWARD

**A.    The Arbitration Agreement**

8. In July 28 1997, Marnavi S.p.A. ("Marnavi"), acting on behalf of Jilmar, as shipowner; APS, as contractor; Guaranteed Advanced Tank Technology, as contractor ("GATT") and Cantiere Naval SEC ("Cantiere", and together with APS and GATT, the "APS Group") entered into a written agreement to perform certain work on the vessel M/T Joran (the "Joran"). A certified, true and correct copy of the "Agreement to Qualify With IMO the APS Marine Line Coating as Suitable Barrier to Carry IMO II-III Mineral Acid Products on Mild Steel Cargo Tanks" (the "Agreement") is annexed as Exhibit A to the accompanying Affidavit of George Lugg in Support of Petition to Confirm Foreign Arbitral Award", dated June 23, 2008 (the "Lugg Aff."), which is in turn annexed as Exhibit 1 to this Petition.

9. More specifically, the APS Group agreed to supply and install or alternatively supervise the installation of Siloxirane Marine Line Coating ("Siloxirane"), an allegedly high performance tank coating system.

10. The APS Group understood that the Owners had entered into the Agreement in reliance on the APS Group's representations that the Siloxirane coating would permit the Owners to convert the Joran from a carrier of edible oils into a vessel meeting the International Maritime Organization ("IMO") standards for carrying IMO-II level corrosive substances.

11. In addition, in further reliance on the APS Group's representations concerning Siloxirane's effectiveness in protecting cargo tanks from the corrosive effects of toxic substances, the Owners removed several stainless steel cargo tanks at great cost and replaced them with standard mild steel tanks in order to increase the Joran's carrying capacity.

12. Notwithstanding the APS Group's representations, the Siloxirane coating did not achieve the resistance to corrosive and toxic cargoes necessary to permit the Joran to ship them in its cargo tanks. In addition, a large portion of the cargo tanks' fiberglass surfaces were damaged during the heat curing process used to apply the Siloxirane.

13. As a result of the APS Group's breach of the Agreement, the Owners suffered substantial losses, including, *inter alia*, the cost of converting the Joran, including the replacement of the cargo tanks, the cost of repairing the defective Siloxirane coating, the cost of repairing the protective fiberglass lining in the cargo tanks damaged by the Siloxirane's coating's failure, and the loss of earnings while the repairs were performed.

**B.     The Appointment of the Arbitrator**

14. Section I of the Agreement (the "Arbitration Clause), entitled "**Disputes**", provides for any disputes relating to the Agreement to be resolved by arbitration in London:

> Any dispute arising between the parties as to the performance of any portion of this Agreement which cannot be amicably settled by the parties shall be referred to arbitration in London.

15. On or about December 18, 2001, Marnavi, as agent for Jilmar, submitted a demand for arbitration to APS, GATT and Cantiere. *See* Affidavit of Michael Lloyd in Support of Petition to Confirm Foreign Arbitral Award ("Lloyd Aff."), dated June 25, 2008, at ¶ 8, which is annexed as Exhibit 2 to this Petition.

16. Pursuant to both section H of the Agreement and also The Arbitration Act, 1996, which governs arbitration in England and Wales (the "TAA"), Marnavi chose Mr. George Lugg, at 1 White's Row, London, E1 7NF, to act as sole arbitrator.

17. The APS Group were notified of Mr. Lugg's appointment, but failed to follow the arbitration procedures specified in the TAA, and thus refused to chose a second arbitrator or agree to the appointment of Mr. Lugg as sole arbitrator.

18. As a result, Petitioner, as agent for Jilmar, applied to the High Court of Justice, Queens Bench Division (the "High Court") for the appointment of an arbitrator.

19. On June 15, 2001, the High Court issued an order appointing Mr. Lugg as sole arbitrator (the "Arbitrator").

20. The appointment of Mr. Lugg as arbitrator was duly authorized under the TAA and was served upon each of APS, GATT and Cantiere.

**C.    Arbitration Proceedings Commence.**

21. Following Mr. Lugg's appointment, Marnavi, as agent for Jilmar, served Points of Claim on each member of the APS Group (the "Points of Claim").

22. The Owners alleged that the Siloxirane coating applied to the Joran was defective and claimed damages for substantial losses and expenses arising from the APS Group's breach of the Agreement.

23. The Arbitrator invited APS, GATT and Cantiere to make submissions in response to the Points of Claim.

24. Cantiere did not respond.

25. APS directly notified the Arbitrator that GATT had ceased to trade.

26. APS acknowledged receipt of and responded to the Points of Claim through its counsel, John M. Manos.

27. APS admitted in its submissions that:

(a) APS had supplied the Siloxirane used on the Joran;

(b) APS had overseen the application of the Siloxirane to the Jilmar's tanks,

(c) APS had been required under the Agreement to apply the final heat curing of the Siloxirane and in fact did apply the final heat curing;

(d) the fiberglass linings at the bottom of the Jilmar's tanks had been contaminated because the Siloxirane had failed to protect them; and

(e) the failure of the Siloxirane coating had failure required the Owners to replace the fiberglass lining at the bottom of the tanks and to repair the large portions of the coating that had failed.

28. However, APS claimed that the Siloxirane coating failed not because it was defective, but rather because the subcontractors hired by the Owners had improperly applied the Siloxirane coating.

29. APS argued that the APS Group had been excused from performance because the Owners had allegedly breached the Agreement by not delivering the Joran to Cantiere's shipyard, which the APS Group alleged was required under the Agreement.

30. APS also claimed that all work on the Joran that had in fact been performed on the Joran was done not under the Agreement, but instead under an alleged separate, oral agreement.

31. According to APS, the terms of the alleged oral agreement:

(a) Transferred sole responsibility for the preparing and coating Jilmar's tanks with Siloxirane from APS to the Owners;

(b) Limited APS' duties to supplying Siloxirane and conducting the final heat curing;

(c) Required neither the arbitration of disputes, nor that disputes be resolved in London.

32. The Owners countered that no oral agreement existed.

33. The Owners further alleged that the delivery of the Joran to Cantiere was not a precondition for the APS Group's performance under the Agreement..

**D.   The First Arbitration Award.**

34. The APS Group and the Owners requested that prior to any determination of liability or the amount of damages, the Arbitrator issue an interim award resolving the question of the Arbitrator's jurisdiction to settle the dispute between the Owners and Respondents.

35. In response, on July 15, 2002, the Arbitrator issued a written, interim award finding, *inter alia*, that the Agreement (including the Arbitration Clause) was valid, remained in force and was binding upon the Owners and the APS Group, and that the APS Group had carried out their work on the Joran under the written Agreement, and not some alleged oral agreement.

36. In sum, the Arbitrator held that the dispute fell within the scope of the Arbitration Clause.

37. The Arbitrator further held that he had jurisdiction to arbitrate "all disputes between the parties arising out of the contract for the coating of the cargo tanks of the m.v. [sic] 'JORAN' by the Contractors". Interim Arbitration Award, dated July 15, 2002 (the "First Award"). A certified, true and correct copy of the First Award is attached as **Exhibit G** to the Lugg Aff.

E. **The Second Interim Award**

38. After the publication of the First Award, the Owners asked the Arbitrator to determine APS' liability for the failure of the Siloxirane tank coating system.

39. The Owners ultimately demonstrated that the Siloxirane coating did not have the corrosion resistance advertised in APS' sales literature.

40. The Joran was not fit to carry the IMO Class II chemicals that it had been intended to carry after the application of the Siloxirane.

41. The Owners further showed that large portions of the Siloxirane and fiberglass coatings covering the tanks had been damaged during the heat curing process, and that as a result the Owners had incurred substantial losses and expenses repairing such damage.

42. In spite of invitations from the Arbitrator, the APS Group made no further submissions to the Arbitrator on the question of liability.

43. Instead, APS' attorney specifically informed the Arbitrator that APS would not make any further submissions to the tribunal.

44. Thus, the Arbitrator made his determination as to liability based on the original submissions from both the Owners and the APS Group and also additional documentary evidence produced by the Owners.

45. On February 4, 2003, the Arbitrator issued the Second Award, which held the APS Group jointly and severally liable for breach of the Agreement. (the "Second Award"). A certified, true and correct copy of the Second Award is attached as **Exhibit K** to the Lugg Aff.

46. Reviewing the submissions that had been submitted by the parties, the Arbitrator concluded that:

    (a) "[t]here was no dispute that the [Siloxirane] coating had failed";

    (b) the Siloxirane coating failed because it was "inadequate", and had not failed due to any acts of the Owners;

    (c) Cantiere, not the Owners, was responsible for supervising the work done on the Joran;

    (d) all of the possible causes of the failure were the responsibility of the APS Group, not the Owners; and

    (e) finally, that the Owners had not breached the Agreement.

### F. The Final Arbitration Award

47. After the determination of liability the Owners requested that the Arbitrator determine the quantum of damages.

48. In response to this request, the Arbitrator once again requested that each member of the APS Group make submissions on the damages issue.

49. However, the only communication made by any member of the APS Group was from John Manos, who informed the Arbitrator in writing that APS was in receivership in Ohio.

50. Although GATT never filed a voluntary petition under chapter 7 or 11 or under the U.S. Bankruptcy Code and was never the subject of a judicial receivership, the APS Group refused to make submissions on the issue of damages.

51. On November 11, 2005, the Arbitrator issued a final quantum award finding, APS, GATT and Cantiere jointly and severally liable and awarding Jilmar the following:

    A. US $1,800,630.00 for the costs of conversion and recoating of the Joran's cargo tanks to carry corrosive and toxic cargoes, with interest thereon at the rate of 6.1 % per annum, from April 15, 1998;

    B. US $892,556.00 for the costs of conversion and recoating of the Joran's cargo tanks to carry corrosive and toxic cargoes, with interest thereon at the rate of 5.9% per annum, from November 12, 1998;

    C. Italian Lira 144,973,670 for the costs of subsequent repairs following failure of the coating provided and applied by APS, with interest thereon at the rate of 5.7% per annum, from July 10, 1999;

    D. DM 331,999.98, plus US $55,333.33 for damages equivalent to the loss of the hire of the Joran while she was undergoing repair, with interest thereon at the rate of 5.7% per annum, from July 10, 1999;

    E. The Contractors and Owners costs of the reference in full, including (i) the Arbitrator's fees, (ii) the Owners' attorneys fees and expenses, and (iii) the Owners' costs, with interest thereon at the rate of 6.5% per annum, from November 11, 2005;

    G. Interest on all of the above to be compounded at three monthly intervals, from the specified date above until the date of payment of the APS Award.

*See* Final Arbitration Award on Quantum, dated November 11, 2005 (the "Third Award" and together with the First Award and Second Award, the "APS Award"). A certified, true and correct copy of the Final Award is attached as **Exhibit N** to the Lugg Aff.

52. The Arbitrator subsequently sent the Arbitration Award to APS.

53. The time for APS, GATT and Cantiere to appeal the Arbitration Award has expired, and no further appeal is possible. *See* Lloyd Aff., ¶ 11.

54. The APS Award is thus final and binding on the APS Group under the Laws of England and Wales. *See* TAA, § 58.

9

**FIRST CLAIM FOR RELIEF**
**9 U.S.C. § 207**

55. The Petitioner repeats and realleges each and every allegation contained in paragraphs 1 through 54 above, inclusive, and incorporates them herein by reference.

56. The Award was made in the United Kingdom, a nation that is a signatory to the New York Convention and which is a state other than the state where recognition and enforcement is sought hereby.

57. The APS Award falls under the New York Convention pursuant to 9 U.S.C. § 202, in that it was made in the territory of the United Kingdom, arises out of a commercial legal relationship and is not entirely between citizens of the United States.

58. The FAA provides that "the court *shall* confirm the award unless it finds that one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York Convention]".  9 U.S.C. § 207.

59. This Petition is timely made and no cognizable grounds for refusal or deferral of recognition or enforcement of the APS Award exists.

60. Petitioner is therefore entitled to confirmation of the APS Award.

61. Under controlling law, Petitioner is entitled to prejudgment interest, calculated at an appropriate rate, on the amount APS Award.

62. Under controlling law, Petitioner is entitled to an award of costs and expenses, including attorneys fees to bring the arbitration case and to enforce the APS Award.

63. By reason of the foregoing, Petitioner is entitle to the entry of an order and judgment confirming the Award and entering the APS Award, and each and every term thereof, as a judgment of this Court, as against APS, plus an award including attorneys fees, costs and expenses.

WHEREFORE, Petitioner Marnavi, as agent for Jilmar, respectfully requests that this Court, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and its implementing legislation, 9 U.S.C. §§ 1 *et seq.,* enter an Order confirming the aforementioned APS Award and granting judgment in favor of Marnavi, as agent for Jilmar, against APS, jointly and severally, in the following manner:

(a) US $1,800,630.00, with interest thereon at the rate of 6.1% per annum, from April 15, 1998 to the date of judgment;

(b) US $892,556.00, with interest thereon at the rate of 5.9% per annum, from November 12, 1998, to the date of judgment;

(c) Italian Lira 144,973,670, with interest thereon at the rate of 5.7% per annum, from July 10, 1999 to the date of judgment;

(d) DM 331,999.98, plus US $55,333.33, with interest thereon at the rate of 5.7% per annum, from July 10, 1999 to the date of judgment;

(e) The Contractors and Owners costs of the arbitration reference in full, including (i) the Arbitrator's fees, (ii) the Owners' attorneys fees and expenses; and (iii) the Owners costs, with interest thereon at the rate of 6.5% per annum, from November 11, 2005 to the date of judgment;

(f) Interest on all of the above to be compounded at three monthly intervals, from the specified date above until the date of payment of the APS Award or judgment, whichever comes first;

(g) To convert the Arbitration Award into a money judgment in the amount of no less than, as of the date of the filing of this Petition, $5,702,157.00;

(h) Interest at the federal judgment rate as set forth in 18 U.S.C. § 3612(f)(2) from the date of judgment by this Court until complete satisfaction by payment in full of the judgment;

(i) Awarding Petitioner Marnavi, as agent for Jilmar, against APS, costs, including attorneys' fees, in this proceeding; and

(j) Such other and further relief as the Court may deem to be just and proper.

Dated: June 25, 2008

**DUANE MORRIS LLP**

/s/ Frederick B. Rosner
Frederick B. Rosner (DE # 3995)
Matt Neiderman (DE # 4018)
1100 North Market Street
Suite 1200
Wilmington, DE 19081-1246
(302) 657-4900

- and -

OF COUNSEL:

**SALANS**

Claude D. Montgomery, Esq.
Paul C. Gunther, Esq.
620 Fifth Avenue
Rockefeller Center
New York, New York 10020
212-632-5500

*Attorneys for Marnavi, SpA as agent for Jilmar Shipping S.A.*

# CIVIL COVER SHEET

The JS-44 civil cover sheet and information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Marnavi, SpA, as agent for Jilmar Shipping, S.A.

## DEFENDANTS
Advanced Polymer Sciences, Inc.

**(b)** County of Residence of First Listed Plaintiff: Italy
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Frederick Rosner, Esq., (I.D. #3995) Duane Morris LLP
1100 North Market Street, Suite 1200, Wilm., DE 19801
(302) 657-4900

Attorneys (If Known)
Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**TORTS — PERSONAL INJURY**
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury— Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS–Third party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC/Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice Act
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.) 9 U.S.C. § 201 et seq.

Action for confirmation and enforcement of a foreign arbitral award made in the United Kingdom.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $5,702,157.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See Instructions):
JUDGE Pending
DOCKET NUMBER Pending (Marnavi v. Keehan, et al.)

DATE: June 25, 2008
SIGNATURE OF ATTORNEY OF RECORD: /s/ Frederick B. Rosner (Del. No. 3995)

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____